E. MARTIN ESTRADA
United States Attorney
ANNAMARTINE SALICK
Assistant United States Attorney
Chief, National Security Division
ANDREW M. ROACH (Cal. Bar No. 293375)
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0306
    Facsimile: (213) 894-2927
    E-mail:   andrew.roach@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:23-CR-00085-ODW |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT AMIR HOSSEIN GOLSHAN |
| v. | |
| AMIR HOSSEIN GOLSHAN, | |
| Defendant. | |

1.   This constitutes the plea agreement between Amir Hossein Golshan ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts one, two, and four of the indictment in United States v. Amir Hossein Golshan,

No. 2:23-CR-00085-ODW, which charge defendant with unauthorized access to a protected computer to obtain information, in violation of 18 U.S.C. § 1030(a)(2)(C), (c)(2)(B)(i), (c)(2)(B)(ii) (count one), wire fraud, in violation of 18 U.S.C. § 1343 (count two), and accessing a computer to defraud and obtain value, in violation of 18 U.S.C. § 1030(a)(4), (c)(3)(A) (count four).

   b.   Not contest facts agreed to in this agreement.

   c.   Abide by all agreements regarding sentencing contained in this agreement.

   d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

   e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

   f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

   g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

   h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

2

1          i.   Complete the Financial Disclosure Statement on a form

2   provided by the USAO and, within 30 days of defendant's entry of a

3   guilty plea, deliver the signed and dated statement, along with all

4   of the documents requested therein, to the USAO by either email at

5   usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

6   Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

7   Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

8   criminal debt shall be assessed based on the completed Financial

9   Disclosure Statement and all required supporting documents, as well

10  as other relevant information relating to ability to pay.

11         j.   Authorize the USAO to obtain a credit report upon

12  returning a signed copy of this plea agreement.

13         k.   Consent to the USAO inspecting and copying all of

14  defendant's financial documents and financial information held by the

15  United States Probation and Pretrial Services Office.

16         l.   Defendant further agrees:

17         i.   To forfeit all right, title, and interest in and

18  to any and all monies, properties, and/or assets of any kind, derived

19  from or acquired as a result of, or used to facilitate the commission

20  of, or involved in the illegal activity to which defendant is

21  pleading guilty, specifically including, but not limited to, the

22  following items (collectively, the "Forfeitable Assets"):

23              (I)  All digital devices seized from defendant

24  and his residence during the execution of a search warrant on

25  February 2, 2023 (collectively, the "Seized Devices"), including but

26  not limited to, the following devices:

27                   (A)  MacBook Pro (Silver), bearing serial

28  number C02TP0XYHTD8;

1                            (B)   ASUS Laptop, bearing serial number

2 M1N0CV082657022, and charger;

3                            (C)   MacBook Pro, bearing serial number

4 C02CT2FXMD6Q, and charger;

5                            (D)   Apple iPhone, bearing IMEI

6 356740911560093;

7                            (E)   Apple iPhone, bearing IMEI

8 356169096341535;

9                            (F)   Apple iPhone, bearing IMEI

10 356765081822551;

11                            (G)   Apple iPhone, bearing IMEI

12 356478104319122; and

13                            (H)   Apple iPhone, bearing IMEI

14 356841113720954.

15                   (II) All cryptocurrency found on the Seized

16 Devices, including, but not limited to, any cryptocurrency found in

17 any wallets stored on the Seized Devices, or controlled by private

18 keys found on the Seized Devices; and

19                   (III)    All other digital property found on the

20 Seized Devices.

21                 ii.  Not to contest in any way the government's

22 destruction, disposal, or transfer of the Forfeitable Assets, which

23 the government may elect to do in its sole discretion at any time

24 after the entry of an order of forfeiture.

25                 iii. To the Court's entry of an order of forfeiture at

26 or before sentencing with respect to the Forfeitable Assets and to

27 the forfeiture of the assets.

28

                    iv.   To take whatever steps are necessary to pass to
the United States clear title to the Forfeitable Assets, including,
without limitation, the execution of a consent decree of forfeiture
and the completing of any other legal documents required for the
transfer of title to the United States.

                    v.    Not to contest any administrative forfeiture
proceedings or civil judicial proceedings commenced against the
Forfeitable Assets.  If defendant submitted a claim and/or petition
for remission for all or part of the Forfeitable Assets on behalf of
himself or any other individual or entity, defendant shall and hereby
does withdraw any such claims or petitions, and further agrees to
waive any right he may have to seek remission or mitigation of the
forfeiture of the Forfeitable Assets.

                    vi.   Not to assist any other individual in any effort
falsely to contest the forfeiture of the Forfeitable Assets.

                    vii. Not to claim that reasonable cause to seize the
Forfeitable Assets was lacking.

                    viii.   To prevent the transfer, sale, destruction,
or loss of any and all assets described above to the extent defendant
has the ability to do so.

                    ix.   To fill out and deliver to the USAO a completed
financial statement listing defendant's assets on a form provided by
the USAO.

                    x.    That forfeiture of Forfeitable Assets shall not
be counted toward satisfaction of any special assessment, fine,
restitution, costs, or other penalty the Court may impose.

          m.    Agree to and not oppose the imposition of the
following conditions of probation or supervised release:

i.   Defendant shall submit defendant's person and any property under defendant's control, including any residence, vehicle, papers, computers, cell phones, other electronic communications or data storage devices or media, email accounts, social media accounts, cloud storage accounts, or other areas under the defendant's control, and effects, to suspicion-less search and seizure at any time of the day or night by any law enforcement or probation officer, with or without a warrant, and with or without cause; and if stopped or questioned by a law enforcement officer for any reason, defendant shall notify that officer that defendant is on federal supervised release and subject to search.  Failure to submit to a search may be grounds for revocation.  Defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition.

ii.   Defendant shall be limited to one virtual currency wallet, and that one wallet shall be used for all virtual currency transactions.  Defendant shall not obtain or open any virtual currency wallets/accounts without prior approval of the Probation Officer.  All virtual currency transactions, along with any virtual currency wallet Extended Public Keys (XPUB), shall be disclosed to the Probation Officer upon request.  Defendant shall be limited to only using and possessing open public blockchain virtual currencies and restricted from using privacy-based blockchain virtual currencies, unless prior approval is obtained from the Probation Officer.

iii. Defendant shall possess and use only those digital devices, screen usernames, email accounts, social media accounts, messaging applications, and cloud storage accounts, as well

6

as any passwords or passcodes for all such digital devices and accounts, which have been disclosed to the Probation Officer upon commencement of supervision.  Any new devices, accounts, applications, passwords, or passcodes are to be disclosed to the Probation Officer prior to the first use.  A digital device is any electronic system or device that can access, view, obtain, store, or transmit digital data related to email accounts, financial accounts, and social media accounts.

iv.  All computers, computer-related devices, and their peripheral equipment, used by defendant shall be subject to search, seizure and computer monitoring.  This shall not apply to items used at the employment site that are maintained and monitored by the employer.

v.  Defendant shall comply with the rules and regulations of the Computer Monitoring Program.  Defendant shall pay the cost of the Computer Monitoring Program.

vi.  Defendant shall comply with the Internal Revenue Service's reporting requirements as they pertain to virtual currencies and shall provide proof of having done so to the Probation Officer.

vii. Defendant shall not engage in the purchase, sale, or transfer of social media accounts, non-fungible tokens, or any other digital property without the express approval of the Probation Officer, nor shall defendant engage in any business, either as whole or partial owner, employee, or otherwise, involving the purchase, sale, or transfer of social media accounts, non-fungible tokens, or any other digital property without the express approval of the Probation Officer.  Further, defendant shall provide the Probation

1 Officer with access to any and all records, lists, and any other
2 documentation pertaining to the purchase, sale, or transfer of social
3 media accounts, non-fungible tokens, or any other digital property,
4 or any related business, as directed by the Probation Officer.
5        viii.   Defendant is not to partake in gambling or
6 enter any gambling establishment where gambling is conducted, or
7 have access to gambling websites or applications.
8        ix.  Defendant is prohibited from using any programs
9 or applications that provide for end-to-end encrypted communication.
10 THE USAO'S OBLIGATIONS
11    3.  The USAO agrees to:
12      a.  Not contest facts agreed to in this agreement.
13      b.  Abide by all agreements regarding sentencing contained
14 in this agreement.
15      c.  At the time of sentencing, move to dismiss the
16 remaining counts of the indictment against defendant.  Defendant
17 agrees, however, that at the time of sentencing the Court may
18 consider any dismissed charges in determining the applicable
19 Sentencing Guidelines range, the propriety and extent of any
20 departure from that range, and the sentence to be imposed.
21      d.  At the time of sentencing, provided that defendant
22 demonstrates an acceptance of responsibility for the offenses up to
23 and including the time of sentencing, recommend a two-level reduction
24 in the applicable Sentencing Guidelines offense level, pursuant to
25 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
26 additional one-level reduction if available under that section.
27      e.  At the time of sentencing, if before the November 1,
28 2023 effective date for the proposed amendments to the Sentencing

8

Guidelines, recommend that defendant receive a two-level reduction in the applicable Sentencing Guidelines offense level, under the Adjustment for Certain Zero-Point Offenders, pursuant to U.S.S.G. § 4C1.1 of the proposed amendments to the Sentencing Guidelines, provided that defendant qualifies for the reduction under U.S.S.G. § 4C1.1, and there has been no legislative or administrative action withdrawing or delaying the November 1, 2023 effective date for U.S.S.G. § 4C1.1.

f.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), (b)(2), and money laundering, in violation of 18 U.S.C. §§ 1956, 1957, arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 14 below.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

<u>NATURE OF THE OFFENSES</u>

4.   Defendant understands that for defendant to be guilty of the crime charged in count one, that is, unauthorized access to a protected computer to obtain information, in violation of Title 18, United States Code, Section 1030(a)(2)(C), (c)(2)(B)(i),

(c)(2)(B)(ii), the following must be true: (1) defendant accessed without authorization a protected computer; (2) by accessing a computer without authorization, defendant obtained information from a computer that was used in or affecting interstate or foreign commerce or communication; and (3) the offense was committed for purposes of personal financial gain or in furtherance any criminal or tortious act in violation of the Constitution or laws of the United States or of any State, namely, wire fraud, in violation of 18 U.S.C. § 1343.

5.   Defendant understands that for defendant to be guilty of the crime charged in count two, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, the following must be true: (1) defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

6.   Defendant understands that for defendant to be guilty of the crime charged in count four, that is, accessing a computer to defraud and obtain value, in violation of Title 18, United States Code, Section 1030(a)(4), (c)(3)(A), the following must be true: (1) defendant knowingly accessed without authorization a computer used in or affecting interstate or foreign commerce or communication;

10

(2) defendant did so with the intent to defraud; (3) by accessing the computer without authorization, the defendant furthered the intended fraud; and (4) defendant by accessing the computer without authorization obtained anything of value.

<u>PENALTIES AND RESTITUTION</u>

7.   Defendant understands that the statutory maximum sentence that the Court can impose for unauthorized access to a protected computer to obtain information, in violation of Title 18, United States Code, Section 1030(a)(2)(C), (c)(2)(B)(i), (c)(2)(B)(ii), as alleged in count one, is: 5 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.   Defendant understands that the statutory maximum sentence that the Court can impose for wire fraud, in violation of Title 18, United States Code, Section 1343, as alleged in count two, is: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.   Defendant understands that the statutory maximum sentence that the Court can impose for accessing a computer to defraud and obtain value, in violation of Title 18, United States Code, Section 1030(a)(4), (c)(3)(A), as alleged in count four, is: 5 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

1    10.   Defendant understands, therefore, that the total maximum

2 sentence for all offenses to which defendant is pleading guilty is:

3 30 years' imprisonment; a three-year period of supervised release; a

4 fine of $750,000 or twice the gross gain or gross loss resulting from

5 the offenses, whichever is greatest; and a mandatory special

6 assessment of $300.

7    11.   Defendant understands that defendant will be required to

8 pay full restitution to the victims of the offenses to which

9 defendant is pleading guilty.  Defendant agrees that, in return for

10 the USAO's compliance with its obligations under this agreement, the

11 Court may order restitution to persons other than the victims of the

12 offenses to which defendant is pleading guilty and in amounts greater

13 than those alleged in the counts to which defendant is pleading

14 guilty.  In particular, defendant agrees that the Court may order

15 restitution to any victim of any of the following for any losses

16 suffered by that victim as a result: (a) any relevant conduct, as

17 defined in U.S.S.G. § 1B1.3, in connection with the offenses to which

18 defendant is pleading guilty; and (b) any counts dismissed and

19 charges not prosecuted pursuant to this agreement as well as all

20 relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with

21 those counts and charges.  The parties currently believe that the

22 applicable amount of restitution is approximately $750,000, but

23 recognize and agree that this amount could change based on facts that

24 come to the attention of the parties prior to sentencing.

25    12.   Defendant understands that, by pleading guilty, defendant

26 may be giving up valuable government benefits and valuable civic

27 rights, such as the right to vote, the right to possess a firearm,

28 the right to hold office, and the right to serve on a jury.

Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

13.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

14.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant

13

1    and the USAO agree to the statement of facts provided below and agree

2    that this statement of facts is sufficient to support pleas of guilty

3    to the charges described in this agreement and to establish the

4    Sentencing Guidelines factors set forth in paragraph 16 below but is

5    not meant to be a complete recitation of all facts relevant to the

6    underlying criminal conduct or all facts known to either party that

7    relate to that conduct.  Defendant and the USAO agree the facts

8    provided below constitute relevant conduct for purposes of

9    calculating the Sentencing Guidelines under U.S.S.G. § 1B1.3.

10         Beginning on an unknown date, but no later than April 1, 2019,

11   and continuing through February 2, 2023, in Los Angeles County,

12   within the Central District of California, defendant Amir Hossein

13   Golshan, working alone and sometimes with other co-conspirators,

14   knowingly and with the intent to defraud, executed a scheme to

15   defraud victims through various online scams and unauthorized

16   intrusions into victims' digital accounts.  Over the course of the

17   scheme, defendant employed a variety of fraudulent means to defraud

18   hundreds of victims, including Zelle merchant fraud, in which

19   defendant fraudulently offered fake and non-existent services on

20   social media, SIM swapping[1] and social media account takeovers, in

21   which defendant would take over social media accounts to extort the

22   account owners and defraud additional victims, and, finally,

23   impersonating support personnel from Apple, Inc. ("Apple") to take

24

25   _____

26   [1] "SIM swapping" refers to the process of fraudulently inducing
     a mobile network carrier to reassign a cell phone number from the
     legitimate subscriber or user's SIM card and cell phone to a SIM card
27   and cell phone controlled by a fraudster without the legitimate
     subscriber or user's authorization.  This allows the fraudster to
28   take control of the victim's various accounts through two-step
     authentication text messages sent to a victim's cell phone.

over victims' iCloud accounts to steal non-fungible tokens ("NFTs"), cryptocurrency, and other digital property.  In so doing, defendant's entire scheme caused approximately $740,000 in losses to the hundreds of victims of defendant's fraud.

Zelle Merchant Fraud

Defendant's Zelle merchant fraud involved fraudulently advertising fake and non-existent Instagram services to individual victims for several hundred dollars each.  For example, on August 25, 2019, defendant falsely represented on Instagram that he could provide a verified Instagram badge for victim M.S.'s teenage daughter's Instagram account for $300.  Defendant knew this statement was false, as only Instagram could provide a verified account badge. Defendant nonetheless falsely represented in Instagram messages to victim M.S. that he could provide this verification for the account, which fraudulently induced victim M.S. to send an electronic payment of $300 to defendant.  This electronic payment was deposited directly into defendant's bank account.

SIM Swapping & Social Media Account Takeovers

Defendant's SIM swapping and social media account takeovers targeted both the account owners and their online friends, duping them into sending money to defendant.  For instance, on December 26, 2021, defendant fraudulently caused victim L.K.'s cell phone number to be SIM swapped, that is, ported to a new cell phone that defendant controlled.  After taking control of the victim's cell phone number, defendant reset the passwords to the victim's social media accounts which allowed defendant to take control of those accounts.  At the time, victim L.K. was a social media influencer and model with over 100,000 followers on various social media accounts.  Defendant then

logged into victim L.K.'s Instagram account without authorization, impersonated her to her friends, and requested that victim L.K.'s friends send him money through Zelle, PayPal, and other online payment platforms.  Several of the victim's online friends sent the defendant money, totaling thousands of dollars, believing they were sending money to the victim.  During the time that defendant locked victim L.K. out of her accounts, defendant sent victim L.K. multiple messages demanding $2,000 for the return of her accounts and threatening to delete her accounts if she did not pay the defendant. In so doing, defendant intentionally accessed without authorization a protected computer belonging to Meta Platforms, Inc., to obtain information for the purpose of private financial gain and in furtherance of wire fraud.

On another occasion, on January 2, 2022, defendant fraudulently caused victim A.F.'s cell phone number to be SIM swapped to a new cell phone that defendant controlled.  After taking control of her cell phone number, defendant similarly reset the passwords to the victim's social media accounts which allowed defendant to take control of these accounts.  Defendant then logged into victim A.F.'s Instagram account without authorization, impersonated her to her friends, and requested that victim's friends send him money.  As an example, later that same day, defendant, while located in California, sent an Instagram direct message from victim A.F.'s Instagram account to victim J.T., who was then in New York.  Defendant pretended to be victim A.F. and requested that victim J.T. send him an electronic payment of $800 to his email address, which victim J.T. did.  This $800 electronic payment was deposited directly into defendant's bank account.  Defendant also contacted victim A.F. while she was locked

out of her accounts and demanded that she pay him $5,000 to restore access to her accounts or else he would delete them.  By accessing victim A.F.'s Instagram account and fraudulently inducing victim J.T. to send him money, defendant intentionally accessed without authorization a protected computer belonging to Meta Platforms, Inc., with the intent to defraud and obtained $800, in addition to using interstate wires to carry out an essential part of defendant's wire fraud scheme.

Another time, on January 15, 2022, defendant fraudulently caused victim E.W.'s cell phone number to be SIM swapped to a new cell phone that defendant controlled.  Defendant then reset the passwords to victim E.W.'s social media accounts which gave him control of victim E.W.'s accounts.  Defendant then accessed victim E.W.'s social media accounts, which had victim E.W.'s personal photos and videos saved on them.  Defendant contacted victim E.W. and demanded that she pay him $5,000 for the return of her accounts or else he would post her videos online.

Between defendant's Zelle merchant fraud and SIM swapping and social media account takeovers, defendant fraudulently induced approximately $82,000 in payments from approximately 500 victims, usually in increments of $300 to $500 per victim.

Apple Support Fraud/NFT & Cryptocurrency Theft

Most recently, defendant impersonated Apple Support personnel to gain unauthorized access to several victims' Apple iCloud accounts to steal NFTs, cryptocurrency, and other valuable digital property. Through this conduct, defendant defrauded approximately five different victims of amounts between $2,000 and $389,000 each.

For example, on August 6, 2022, defendant called victim S.G. from the phone number 1-800-MY-APPLE, and pretended to be Apple Support.  Defendant told victim S.G. that defendant was with Apple Support and wanted to give victim S.G. an advanced security protocol to protect victim S.G.'s iCloud account.  Defendant then caused a two-step authentication code to be sent to victim S.G.'s phone.  Through these misrepresentations, defendant fraudulently induced victim S.G. to tell defendant this six-digit code, which allowed defendant to gain access to victim S.G.'s iCloud account.  Defendant then changed the email address associated with victim S.G.'s iCloud account to an email address that he controlled and stole valuable digital property from victim S.G., including an NFT valued at approximately $319,000 and approximately $70,000 worth of cryptocurrency.  Later that same day, defendant sold the stolen NFT for $130,000 in cryptocurrency on a NFT marketplace.

<u>SENTENCING FACTORS</u>

15.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

16.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | | |
|---|---|---|---|
| Base Offense Level: | | 7 | U.S.S.G. § 2B1.1(a) |
| Specific Offense Characteristics: | | | |
| - Loss more than $550,000 | +14 | | U.S.S.G. § 2B1.1(b)(1)(H) |
| - 10+ victims | +2 | | U.S.S.G. § 2B1.1(b)(2)(A) |
| - Sophisticated means | +2 | | U.S.S.G. § 2B1.1(b)(10)(C) |
| - § 1030 involving personal information | +2 | | U.S.S.G. § 2B1.1(b)(18)(A) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

17.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

18.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

19.   Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.   The right to persist in a plea of not guilty.

      b.   The right to a speedy and public trial by jury.

      c.   The right to be represented by counsel -- and if necessary, have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary, have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

                    WAIVER OF RETURN OF DIGITAL DATA

20.  Understanding that the government has in its possession digital devices and/or digital media seized from defendant during the execution of a search warrant on February 2, 2023, defendant waives any right to the return of the digital devices, the digital data contained on those digital devices, and/or digital media, and agrees that the government has the exclusive right to delete and destroy the digital devices, the digital data contained on those digital devices, and/or digital media.

                    WAIVER OF APPEAL OF CONVICTION

21.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is

pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

### WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

22.  Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 26 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $750,000; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and any conditions of probation or supervised release agreed to by defendant in paragraph 2.

23.  Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence,

21

including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

24.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 26 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $750,000.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

25.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between

the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

26.  Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on any remaining counts of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining convictions, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

EFFECTIVE DATE OF AGREEMENT

27.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

28.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO

23

may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

   a. Following the Court's finding of a knowing breach of this agreement by defendant:

     i. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

   b. Should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

     i. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

ii.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

29.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 16 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

31.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

32.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

//

1             <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2       33.   The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF

7 CALIFORNIA

8 E. MARTIN ESTRADA
United States Attorney

9

10                                        July 7, 2023

           _____     _____

11 ANDREW M. ROACH                      Date
Assistant United States Attorney

12

13                                        6, 28, 2023

           _____     _____

14 AMIR HOSSEIN GOLSHAN               Date
Defendant

15

16                                      6-28-2023

           _____     _____

17 ALAN EISNER                             Date
Attorney for Defendant
AMIR HOSSEIN GOLSHAN

18

19

20

21

22

23

24

25

26

27

28

                                     27

1                             **CERTIFICATION OF DEFENDANT**

2        I have read this agreement in its entirety.  I have had enough

3  time to review and consider this agreement, and I have carefully and

4  thoroughly discussed every part of it with my attorney.  I understand

5  the terms of this agreement, and I voluntarily agree to those terms.

6  I have discussed the evidence with my attorney, and my attorney has

7  advised me of my rights, of possible pretrial motions that might be

8  filed, of possible defenses that might be asserted either prior to or

9  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10  of relevant Sentencing Guidelines provisions, and of the consequences

11  of entering into this agreement.  No promises, inducements, or

12  representations of any kind have been made to me other than those

13  contained in this agreement.  No one has threatened or forced me in

14  any way to enter into this agreement.  I am satisfied with the

15  representation of my attorney in this matter, and I am pleading

16  guilty because I am guilty of the charges and wish to take advantage

17  of the promises set forth in this agreement, and not for any other

18  reason.

19  _____      6,28,2023

20  AMIR HOSSEIN GOLSHAN         Date
      Defendant

1       <u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2           I am Amir Hossein Golshan's attorney.  I have carefully and

3   thoroughly discussed every part of this agreement with my client.

4   Further, I have fully advised my client of his rights, of possible

5   pretrial motions that might be filed, of possible defenses that might

6   be asserted either prior to or at trial, of the sentencing factors

7   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8   provisions, and of the consequences of entering into this agreement.

9   To my knowledge: no promises, inducements, or representations of any

10  kind have been made to my client other than those contained in this

11  agreement; no one has threatened or forced my client in any way to

12  enter into this agreement; my client's decision to enter into this

13  agreement is an informed and voluntary one; and the factual basis set

14  forth in this agreement is sufficient to support my client's entry of

15  guilty pleas pursuant to this agreement.

16

17  _____          _____6·28·2023_____
    ALAN EISNER                                      Date
18  Attorney for Defendant
    AMIR HOSSEIN GOLSHAN

19

20

21

22

23

24

25

26

27

28

                                29