E. MARTIN ESTRADA
United States Attorney
CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division
ANDREW M. ROACH (Cal. Bar No. 293375)
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:    (213) 894-0306
    Facsimile:    (213) 894-2927
    E-mail:        andrew.roach@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AMIR HOSSEIN GOLSHAN,<br><br>Defendant. | No. 2:23-CR-00085-ODW<br><br>**GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT AMIR HOSSEIN GOLSHAN**<br><br>Hearing Date:  November 27, 2023<br>Hearing Time:  9:00 a.m.<br>Location:      Courtroom of the Hon. Otis D. Wright II |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Andrew M. Roach, hereby files its sentencing position for defendant Amir Hossein Golshan.

//

//

//

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 21, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division


  */s/ Andrew M. Roach*
ANDREW M. ROACH
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

ii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant Amir Hossein Golshan is a cybercriminal and scammer.  For years, he lied, stole, scammed, extorted, blackmailed, and victimized hundreds of people.  He attacked people where they felt safe, usually at their homes, and he did it not with a gun or knife, but the tools of a modern cybercriminal, a computer, cellphone, and network connection.  Using these tools of the cybercriminal trade, defendant hacked into victims' social media and other accounts; stole money, cryptocurrency, and non-fungible tokens ("NFTs") worth hundreds of thousands of dollars; and then used the victims' very own identities to victimize others.  He did it for years, causing nearly a million dollars in losses.  He stole victims' life savings and then threatened to release naked photos of their infant children if they did not comply with his extortionate demands.  Other times, he targeted young women, threatening to expose their private messages and images if they did not give him money or what he demanded.  He tormented countless individuals, causing them to fear the worse.  He even forced at least two women to strip for him on videochat while he masturbated, holding their social media accounts hostage unless they acquiesced to his sick demands of sexual extortion.

Defendant's crimes demonstrate an utter lack of respect for the law and basic human dignity.  He showed little remorse for his victims or being caught during his years of crime, believing that he could hide behind the anonymity of online screennames or VPNs, and that his victims—who were on the other side of the computer—would never find him.  Indeed, defendant continued to commit these crimes, becoming more sophisticated and brazen in his actions, up until the FBI arrested him.  Defendant, of course, never expected to stand before this Court or his victims.  He never expected to be caught.  Rather, he believed has was too smart.  He was wrong.  And now he must face the consequences of his actions.  He must face the Court, his victims, and justice.

Defendant deserves a serious sentence, one that reflects the gravity of harm and impact on the victims, while achieving the goals of sentencing.  Accordingly, the

government recommends that the Court sentence defendant to 72 months' imprisonment, three years of supervised release, $1,218,526.10 in restitution, and a $300 special assessment.  The government also recommends the Court impose all the proposed terms and conditions of supervised release except proposed Condition No. 16 ("The defendant is restricted from engaging in educational pursuits that may enhance the defendant's ability to do harm, steal, and commit further crimes") which the government believes is too vague and overbroad to enforce.

## II.    STATEMENT OF FACTS[1]

For nearly four years, between April 2019 through February 2023, defendant was a serial cybercriminal and scammer.  Defendant employed a variety of fraudulent means to scam hundreds of victims over the years.  Defendant started out simple, with Zelle merchant fraud, in which defendant fraudulently offered fake and non-existent services on social media.  As defendant grew more sophisticated, he started SIM swapping victims[2] and taking over their social media accounts.  Defendant would take over social media accounts to extort the account owners and defraud additional victims.  Between defendant's Zelle merchant fraud and SIM swapping/social media account takeovers, defendant fraudulently induced approximately $82,000 in payments from approximately 500 victims, usually in increments of $300 to $500 per victim.

In the months before his arrest, defendant was involved in even more sophisticated spear fishing attacks, where he would target certain individuals with lucrative digital property that he could steal.  Under this scheme, defendant then impersonated support personnel from Apple, Inc. to take over victims' iCloud accounts to steal NFTs,

---

[1] Unless otherwise indicated, all facts are from the agreed-upon factual basis in defendant's plea agreement (Dkt. 49).

[2] "SIM swapping" refers to the process of fraudulently inducing a mobile network carrier to reassign a cell phone number from the legitimate subscriber or user's SIM card and cell phone to a SIM card and cell phone controlled by a fraudster without the legitimate subscriber or user's authorization.  This allows the fraudster to take control of the victim's various accounts through two-step authentication text messages sent to a victim's cell phone.

cryptocurrency, and other digital property.  Through this fraud, defendant defrauded victims of amounts between $2,000 and $389,000 each.[3]

All told, defendant's scheme caused approximately $740,000 in losses to hundreds of victims.

## III.   PRESENTENCE REPORT AND THE GUIDELINES CALCULATIONS

The presentence report ("PSR") and plea agreement accurately summarize defendant's conduct and the government incorporates both herein.  Accordingly, the government requests that the Court adopt the factual findings and guidelines calculations in the PSR.

### A.   Defendant' Criminal History Category

Defendant is in Criminal History Category I.  (PSR at 4.)

### B.   The Agreed-Upon Guidelines

The government, defense, and the probation office agree to the following guidelines calculations:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a) |
| Specific Offense Characteristics: | | |
| - Loss more than $550,000 | +14 | U.S.S.G. § 2B1.1(b)(1)(H) |
| - 10+ victims / Loss resulted in a substantial hardship to one or more victims | +2 | U.S.S.G. § 2B1.1(b)(2)(A)(i), (iii)[4] |
| - Sophisticated means | +2 | U.S.S.G. § 2B1.1(b)(10)(C) |
| - § 1030 involving personal information | +2 | U.S.S.G. § 2B1.1(b)(18)(A) |
| Acceptance of Responsibility: | <u>-3</u> | U.S.S.G. § 3E1.1(a), (b) |
| Total Offense Level | 24 | |

---

[3] The extremely detailed PSR encompasses defendant's conduct and the extreme suffering he brought upon his victims.

[4] Defendant is ineligible for the recently enacted Adjustment for Certain Zero-Point Offenders, U.S.S.G. § 4C1.1, because he personally caused substantial hardship to at least one of his victims.  *See* U.S.S.G. § 4C1.1(a)(6); PSR ¶ 216 (Victim A.S. lost approximately 90% of his life savings).

3

1  Accordingly, at a total offense level of 24, defendant's guidelines would be 51 to
2  63 months' imprisonment with one to three year term of supervised release.  (PSR at 4.)
3  **IV.    GOVERNMENT'S SENTENCING RECOMMENDATION**
4  The government recommends defendant be sentenced to 72 months' imprisonment
5  (six years), followed by three years of supervised release, $1,218,526.10 in restitution,
6  and the special assessment of $300.  This recommendation is sufficient, but not greater
7  than necessary, to achieve the 18 U.S.C. § 3553(a) factors, namely, the nature and
8  circumstances of the offense, the history and characteristics of defendant, and the need
9  for the sentence to reflect the seriousness of the offense and to afford adequate
10  deterrence to criminal conduct.

11  **A.    Nature and Circumstances of the Offense and the History and**
12  **Characteristics of Defendant**

13  First, the nature and circumstances of the offense demand a custodial sentence
14  above the advisory guidelines.  *See* 18 U.S.C. § 3553(a)(1).  Defendant committed a
15  sophisticated scheme of cybercrime—involving wire fraud, computer hacking, identity
16  theft, and money laundering—and he did it for years.  The cumulative impact of
17  defendant's years of crime is significant.  Through his various cybercriminal schemes,
18  defendant stole nearly $1 million from numerous victims.  He had no shame in the
19  victims he targeted.  He would steal from anyone to make a dishonest dollar, including
20  victims as young as 14-year-old aspiring models on Instagram, to young parents who
21  were depending on the stolen funds for childcare, to tech millionaires.  (PSR ¶¶ 46–49,
22  120–125, 148–157.)  He did this all with little remorse, and he would have continued to
23  do so had he not been arrested.

24  Defendant's crimes, however, did not just include money.  On many occasions,
25  defendant's cybercrimes involved sexual extortion and other aggravating factors.  For
26  example, after defendant stole one victim's life savings, defendant threatened to release
27  naked photos of the victim's toddlers if the victim did not take down online postings that
28  the victim made alerting others to his recent hack and the victim's stolen NFTs that

4

defendant was now trying to resell.  (PSR ¶¶ 148–157.)  Defendant also forced multiple women to strip for him on videochat, while he pleasured himself, to get their stolen accounts returned.  (PSR ¶¶ 56, 76.)  These are all aggravating factors not captured by the present guideline calculation, and the government recommends an above-guidelines sentence of 72 months' imprisonment for this reason, among others.

Defendant's history and circumstances also demand a custodial sentence.  While defendant certainly has some mitigating factors, including his young age of 25 years old, his somewhat difficult upbringing and immigration to the United States, and his emotional issues (which are further detailed in defendant's under seal filing), those certainly do not outweigh the harm that he has caused others.  The sheer length of defendant's crime—at least four years—and the nature of them demonstrate his callousness and require a just punishment.  They cannot be trivialized as immaturity or otherwise.  They are crimes, plain and simple, and defendant must pay the price.  As one victim put it, "Don't let his young age fool you as he is wise beyond his years," "[t]his is not just a business for him, this is a perversion and a game."  (PSR ¶ 192.)

In reaching its recommendation of 72 months' imprisonment, the government is mindful of the probation officer's very thorough and detailed PSR and corresponding recommendation of 96 months' imprisonment.  *See* Rec Ltr. at 2.  Section 3553, however, requires a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing.  And here, the government believes that 72 months' imprisonment, or six years, is more consistent with this parsimony principle.  Defendant is certainly deserving of an eight-year prison sentence, and few would view such a sentence as unfair.  But such a sentence would be excessive and more than necessary in this case.

Importantly, the government believes the probation officer's recommendation overlooks several mitigating factors.  First and foremost, defendant accepted responsibility and promptly pleaded guilty, thereby saving prosecutorial, investigative, and judicial resources.  Defendant's acceptance of responsibility was more than typical,

as explained in the defense's sentencing position, and defendant is deserving of some leniency. Second, defendant has put himself at the mercy of the Court. He agreed to waive his right to appeal any sentence so long as the Court sentence him to an offense level of 26, corresponding to 63 to 78 months. *See* Plea Agreement at ¶ 22. Defendant's acceptance of responsibility and waiver of appellate rights militate towards the government's recommended above-guidelines sentence of 72 months. Third, defendant's upbringing and emotional issues are somewhat mitigating. A 72-month sentence will hopefully provide defendant time to work on those issues. Finally, a 72-month sentence is sufficient to punish defendant but still allows defendant to lead a productive life. It still gives him a chance. A 72-month sentence would mean that defendant would likely be released in the summer 2028, a few months before his thirtieth birthday. By then, he will have hopefully had sufficient time to reflect on his ways before embarking on the next decade of the rest of his life.

### B. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Provide Defendant with Needed Training, Care, or Correctional Treatment

The government's recommended 72-month sentence also appropriately accounts for the other sentencing factors. This above-guidelines sentence reflects the seriousness of defendant's offenses and aggravating conduct, many of which are not fully captured in the guidelines, e.g., defendant's sextortion and threatening of victims. *See* Rec. Ltr. at 9. Such a sentence will also instill defendant with a respect for the law. This is important given defendant's poor track record of compliance with court-ordered supervision. A strong sentence is also necessary for both general and specific deterrence. The Court should send a signal to others that computer crimes are serious crimes and will be dealt with appropriately. At the same time, however, the Court should remain mindful that other potential co-conspirators may escape justice and this defendant need not take the entire brunt of it for deterrence. Finally, defendant's six-

6

year sentence will allow him to get needed treatment to begin the rest of his life in a law-abiding manner.

### C.  Kinds of Sentence Available and Unwarranted Sentencing Disparity

The recommended sentence is also appropriate in light of defendant's ineligibility for probation under the guidelines.  Moreover, the recommended sentence is not an unwarranted disparity of similarly situated defendants.  Indeed, another 25-year-old defendant within this District received 41 months' imprisonment for a similar SIM swapping scheme, involving a substantially lower loss amount ($112,000) and less egregious conduct.  *See* U.S. Attorney's Office Press Release, *Michigan Man Sentenced to 3½ Years in Prison for Role in 'SIM Swapping' that Led to Account Takeovers and $122,000 in Losses* (last visited Nov. 20, 2023).  Here, defendant's conduct is much worse than that defendant, and much more deserving of the recommended sentence.

### D.  Three Years of Supervised Release is Appropriate

The government recommends the Court impose the maximum of three years of supervised release.  Such supervision is essential to ensure that defendant remains on a law-abiding path and to protect the public from defendant's potential future crimes.  The government recommends the Court impose all the terms and conditions recommended by the probation officer, including the computer monitoring terms, except proposed Condition No. 16.[5]  The government believes Condition No. 16 is too vague to be enforceable and requests the Court not impose it.  *See United States v. Hugs*, 384 F.3d 762, 768 (9th Cir. 2004) (A condition of supervised release is unconstitutionally vague and violates due process "if it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.").

---

[5] Condition No. 16 states: "The defendant is restricted from engaging in educational pursuits that may enhance the defendant's ability to do harm, steal, and commit further crimes."

7

### E.    Fine and Special Assessment

The government does not recommend the imposition of a fine because defendant has established that he is unable to pay and is not likely to become able to pay any fine. However, a special assessment of $300 is mandatory.

### F.    Restitution

The government recommends the Court order defendant to pay $1,218,526.10 in restitution to the victims.  This number is higher than disclosed in the PSR due to additional information provided by victim A.S., including the cost of property stolen and damaged.[6]  *See* 18 U.S.C. § 3663A(b)(1); *see* Ex. 2 of Under Seal Victim Impact Statement of A.S.  The chart below shows the changes in restitution between the PSR and the government's recommendation.

| | Restitution in PSR | | Government's Recommended Restitution |
|---|---|---|---|
| G.N. | $400.00 | | $400.00 |
| N.Z. | $800.00 | | $800.00 |
| K.M. | $400.00 | | $400.00 |
| A.H. | $100.00 | | $100.00 |
| K.V. | $1.00 | | $1.00 |
| L.M. | $600.00 | | $600.00 |
| M.Z. | $301.00 | | $301.00 |
| D.D. | $444.00 | | $444.00 |
| A.W. | $1,000.00 | | $1,000.00 |
| S.G. | $389,000.00 | | $389,000.00 |
| H.K. | $112,169.00 | | $112,169.00 |
| A.S. | $156,447.63 | | **$704,591.80** |
| S.H. | $2,000.00 | | $2,000.00 |
| S.S. | $1,000.00 | | $1,000.00 |
| E.W. | $5,000.00 | | $5,000.00 |
| A.G. | $719.30 | | $719.30 |
| **Total** | **$670,381.93** | | **$1,218,526.10** |

---

[6] The government filed these victim impact statements and their supporting restitution requests under seal.

8

In addition, victim L.K. (L.G.) submitted a restitution request for $180,837.40. *See* Ex. 1 at 5 of Under Seal Victim Impact Statement of L.K.  This request is based on $120,837.40 in lost income from defendant's hacking of victim L.K.'s social media accounts which adversely affected her career and caused her to lose lucrative modeling contracts and $50,000 in statutory damages for defendant's individual crimes against her. *Id.*  Despite the clear negative financial impact on victim L.K.'s career and earnings, the government is unable to currently find statutory authority to support an award of restitution to victim L.K.  To be eligible for lost income under § 3663A and 3663, a victim must suffer "bodily injury."  18 U.S.C. § 3663A(b)(2)(C), § 3663(b)(2)(C); *United States v. Dayea*, 73 F.3d 229, 231 (9th Cir. 1995) ("Therefore, to be eligible for lost income compensation under § 3663(b)(2), a victim must personally suffer bodily injury.").  Here, victim L.K. did not suffer bodily injury.  Accordingly, the government cannot find authority to support an award to victim L.K. at this time.  The government reserves the right to supplement this position at the hearing with additional information.

### G. Forfeiture

In his plea agreement, defendant agreed to forfeit all right, title, and interest in and to all monies, and all property, and all assets which represent proceeds or instrumentalities of the crimes for which he was convicted.  Defendant also agreed to the Court's entry of forfeiture at or before sentencing relating to the forfeited property.  Prior to sentencing, the government will file an application for preliminary order of forfeiture and proposed preliminary order of forfeiture.

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to 72 months' imprisonment, three years of supervised release, $1,218,526.10 in restitution, and a $300 special assessment.